**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ABSTRAX, INC., | | |
| Plaintiff, | | |
| v. | | Case No. 2:14-CV-158-JRG |
| | | **JURY TRIAL DEMANDED** |
| HEWLETT-PACKARD COMPANY, | | |
| Defendant. | | |

**HP'S MOTION TO TRANSFER VENUE**
**TO THE NORTHERN DISTRICT OF CALIFORNIA (OAKLAND DIVISION)**

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND ......................................... 2

        A.      Litigation Status .................................................................................... 2

        B.      The Accused Instrumentalities ............................................................. 3

        C.      The Parties, Their Locations, Potential Witnesses, and Evidence ......... 4

                1.      *Plaintiff Has No Connections to the Eastern District of Texas* ................ 4

                2.      *HP is Headquartered in the Northern District of California* ................... 5

                3.      *Various Relevant and Material Third Parties are Closer to the Northern*
                        *District of California* ................................................................................ 6

III.    ARGUMENT ...................................................................................................... 7

        A.      Plaintiff Could Have Brought This Action in the Northern District of California . 7

        B.      The Legal Factors for the Transfer Analysis ......................................... 7

        C.      The Private and Public Interest Factors Strongly Favor Transfer to the Northern
                District of California ........................................................................... 8

                1.      *Judicial Economy Concerns Strongly Favor Transfer to the Northern*
                        *District of California* ................................................................................ 9

                2.      *The Relative Ease of Access to Sources of Proof Factor Strongly Favors*
                        *Transfer to the Northern District of California* ................................... 10

                3.      *The Availability of Compulsory Process to Secure the Attendance of*
                        *Witnesses Factor Favors Transfer to the Northern District of California* .......... 11

                4.      *The Cost of Attendance for Willing Witnesses Factor Strongly Favors*
                        *Transfer to the Northern District of California* ................................... 11

5. *The Local Interest in Having Localized Interests Decided at Home Factor Strongly Favors Transfer to the Northern District of California* ......................... 13

6. *The Remaining Public Interest Factors Are Neutral* ............................... 13

D. In the Alternative, HP Requests that the Case Be Transferred to the Southern District of Texas ............................................................................................................. 14

IV. CONCLUSION ............................................................................................................. 15

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Acer Am. Corp.*,
  626 F.3d 1252 (Fed. Cir. 2010)....................................................................8, 9

*In re EMC Corp.*,
  501 Fed. Appx. 973 (Fed. Cir. 2013).................................................................13

*Fifth Gen. Comp. Corp. v. IBM Corp.*,
  No. 9:08-cv-205, 2009 WL 398783 (E.D. Tex. Feb. 13, 2009)...........................8, 13

*In re Genetech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009)........................................................................12

*GeoTag, Inc. v. Starbucks Corp.*,
  Case No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013)....................11

*In re Horseshoe Entm't*,
  337 F.3d 429 (5th Cir. 2003) ...........................................................................7

*In re Nintendo Co.*,
  589 F.3d 1194 (Fed. Cir. 2009)......................................................................7, 8

*Regents of the Univ. of Cal. v. Eli Lilly & Co.*,
  119 F.3d 1559 (Fed. Cir. 1997)........................................................................9

*Rembrandt Vision Techs, L.P. v. Johnson & Johnson Vision Care, Inc.*,
  No. 2:09-cv-200, 2011 WL 2937365 (E.D. Tex. July 19, 2011) ...........................10

*Tech. Properties Ltd. v. Canon, Inc.*,
  No. 6:12-cv-202 (E.D. Tex. July 15, 2014) .......................................................12

*In re Toyota Motor Corp.*,
  747 F.3d 1338 (Fed. Cir. 2014).......................................................................15

*Transunion Intelligence L.L.C. v. Search America, Inc.*,
  No. 2:10-CV-130, 2011 WL 1327038 (E.D. Tex. Apr. 5, 2011)...........................10

*U.S. Ethernet Innovations, LLC v. Acer, Inc.*,
  No. 6:09-cv-448-JDL, 2010 WL 2771842 (E.D. Tex. July 13, 2010)....................12

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ..............................................................12, 13, 15

*In re Volkswagen of Am., Inc.*,
    545 F.3d 304 (5th Cir. 2008) (en banc) .......................................................................7, 8, 12

*Voxpath RS, LLC v. LG Elecs U.S.A., Inc.*,
    No. 2:10-cv-160-JRG, 2012 WL 194370 (E.D. Tex. Jan. 23, 2012)..............................8, 9, 13

*W. Coast Trends, Inc. v. Ogio Int'l, Inc.*,
    No. 6:10-cv-688, 2011 WL 5117850 (E.D. Tex. Oct. 27, 2011)............................................13

*Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co.*,
    402 F. Supp. 2d 731 (E.D. Tex. 2005)....................................................................................9

**Statutes**

28 U.S.C. § 1404(a) ...............................................................................................................2, 7, 14

Cal. Civ. Proc. Code § 1989 ......................................................................................................11

**Other Authorities**

Fed. R. Civ. P. 45......................................................................................................................11

## I.   __INTRODUCTION__

This case should be transferred to the Northern District of California because there is no meaningful connection to the Eastern District of Texas.  This should come as no surprise to plaintiff whose prior litigation against Sun Microsystems, Inc.[1] was transferred to the Northern District of California because the case lacked connections to the Eastern District of Texas.  Similarly, here, there are no witnesses or evidence expected to be located in the Eastern District of Texas.  Instead, many potential witnesses are located in the Northern District of California.

This case should also be transferred for judicial economy.  Northern District of California Judges Phyllis Hamilton and Nandor Vadas presided over the Sun litigation from 2010 to 2013 and have considerable experience with the technology disclosed in the asserted patent.

This case should also be transferred because HP is headquartered in the Northern District of California **and** plaintiff is headquartered in Mesa, Arizona which is substantially closer to the Northern District of California than the Eastern District of Texas.  Indeed, one of plaintiff's two owners lives in Los Angeles, California.  Further, in the Sun litigation, Abstrax offered its two principal witnesses for deposition in California, where plaintiff's principal counsel is located.[2]

Many other factors demonstrate that the Northern District of California is a clearly more convenient venue.  For example, plaintiff accuses manufacturing processes that are performed in a large part by third-party original design manufacturers ("ODMs").  Albert Tang, an HP business manager for ODM relationships, is located in the Northern District of California.  Mike

---

[1] Case No. 4:09-cv-05243 (N.D. Cal).  Plaintiff's previous litigation against Sun involved the same patent at issue in the present litigation.

[2] Indeed, in the present litigation, Abstrax requested that HP produce its source code computer for inspection in Redwood City, California, which is within the Northern District of California. *See* Declaration of Michael Rueckheim at ¶ 13, submitted herewith ("Rueckheim Decl.").

Mixon, an HP manager of the accused Factory Express worldwide processes, is also located there.  A substantial portion of HP's research and development, marketing operations, sales operations, and finance operations are located there as well.

Many relevant and material witnesses are also closer to the Northern District of California than the Eastern District of Texas, including:

- Every expected plaintiff witness;

- The inventors of the asserted patent and its prosecuting attorneys; and

- Dr. Jeffrey Harris, a former Motorola Engineering Manager who previously decided to abandon the asserted patent on behalf of the original assignee Motorola.[3]

In sum, and for the reasons discussed more fully below, the Northern District of California is the clearly more convenient venue.  Accordingly, HP respectfully moves to transfer this case to the Northern District of California pursuant to 28 U.S.C. § 1404(a).  In the alternative, because HP operates a manufacturing facility in Houston that performs the accused Factory Express process, should the Court not transfer the action to the Northern District of California, HP respectfully moves to transfer the litigation to the Southern District of Texas.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Litigation Status

On February 28, 2014, plaintiff filed its Complaint alleging infringement of U.S. Patent No. 6,240,328 ("the '328 patent").  On May 12, 2014, HP filed its Answer specifically denying that venue was convenient in this District for this case.  Dkt. No. 13, ¶ 3.  On July 1, 2014, a scheduling conference was held.  Two weeks later, the parties filed a motion for entry of a

---

[3] This abandonment decision is material, *e.g.*, to HP's inequitable conduct defense and damages analysis.  *See* Dkt. No. 13, ¶¶ 31-53.

scheduling order using the Court's model scheduling order.  Dkt. No. 30.  On the same day, HP

filed a motion to modify the proposed scheduling order showing how the schedule based on the

Court's model docket control order prejudices HP under the facts of the present case.  Dkt. No.

32.  The Court issued a scheduling order today, shortly before the filing of the present motion.

Dkt. No. 51.

Plaintiff previously filed two actions asserting the '328 patent in this District.  The

Dell/Gateway case (No. 2:07-cv-221) terminated in late 2009 and was presided over by Judges

Folsom and Everingham who have both since retired from the bench.  The Sun case (No. 2:07-

cv-333) was transferred to the Northern District of California because neither plaintiff nor Sun

had any connections to the Eastern District of Texas.[4]  *See* Rueckheim Decl. at ¶¶ 2-4.  Northern

District of California Judge Phyllis Hamilton and Magistrate Judge Nandor Vadas presided over

the action from 2010 until 2013 (N.D. Cal. Case No. 4:09-cv-5243).  *Id.* at ¶¶ 4-5.  Judges

Hamilton and Vadas remain active Northern California Judges.  Rueckheim Decl. at ¶¶ 6.

### B.    The Accused Instrumentalities

Plaintiff accuses the manufacturing methods used by "HP and/or its contractors."  *See*

Dkt. No. 32-3 at 2.  Specifically, plaintiff accuses "direct-to-customer … built-to-order,"

"Factory Express," and "POD Works" manufacturing processes.  *Id.* at 2-7.  Plaintiff's

infringement contentions identify hundreds of HP products.  *Id.*

HP and its contractors do not perform ***any*** relevant manufacturing in the Eastern District

of Texas.  *See* Declaration of Bob Campbell at ¶ 15, submitted herewith ("Campbell Decl.")  Due

to the extremely large number of accused products and vague infringement allegations, HP's

_____

[4] Dell/Gateway did not move to transfer their action.

3

internal investigation is ongoing.[5]   However, at this time, HP has determined that Built-to-Order

manufacturing for the accused HP United States products is performed by the following ODMs

located in Juarez, Mexico and Asia: Foxconn / Hon Hai Logistics California, LLC ("Foxconn"),

Inventec Corporation, Pegatron Corp., and Wistron Corporation.  Campbell Decl. at ¶ 10.  POD

Works and *some* Factory Express manufacturing is performed by HP in Houston, Texas.  *Id.* at ¶

9.  Other Factory Express manufacturing is performed in Indiana by Foxconn.  *Id.* at ¶ 10.

Foxconn has a parent company in Taiwan.  Rueckheim Decl. at ¶ 7.

    **C.**    **The Parties, Their Locations, Potential Witnesses, and Evidence**

        *1.*    *Plaintiff Has No Connections to the Eastern District of Texas*

Plaintiff's headquarters is located in Mesa, Arizona, which is closer to the Northern

District of California than the Eastern District of Texas.  Rueckheim Decl. at ¶¶ 8, 21.  Similarly,

plaintiff's two principal owners, Messrs. John Vidalakis and John LaLonde, are both located

closer to the Northern District of California.  Mr. Vidalakis is located in Los Angeles, California.

*Id.* at ¶ 9.  Mr. LaLonde is located in Phoenix, Arizona.  *Id.*  Indeed, in the Sun litigation,

Abstrax chose to offer Messrs. LaLonde and Vidalakis for deposition in California, where

plaintiff's main trial counsel is located.  *Id.* at ¶¶ 10-11.  Abstrax also requested in the present

litigation that HP produce its source code computer for inspection in the Northern District of

California.  Rueckheim Decl. at ¶ 13.  Additionally, two of plaintiff's three experts in the Sun

---

[5] HP's internal investigation is impeded because plaintiff's infringement contentions are severely
deficient.  As such, HP filed a motion to compel infringement contentions that comply with P.R.
3-1.  *See* Dkt. No. 44.

litigation (manufacturing and damages experts) were located in Oakland and Los Angeles, California respectively.  *Id.* at ¶ 9.[6]

It does not appear that plaintiff has any ties to, or witnesses or evidence in, the Eastern District of Texas.  During the meet and confer process, plaintiff could not identify any specific business operations or evidence in the Eastern District of Texas.  *Id.* at ¶ 12.  Plaintiff is not registered as a taxable entity in Texas.  *Id*. at ¶ 14.

2.      *HP is Headquartered in the Northern District of California*

HP's headquarters and principal place of business is in Palo Alto, California, less than thirty-five miles from the courthouse in which Judge Hamilton presided over plaintiff's prior litigation.  Rueckheim Decl. at ¶ 5; Campbell Decl. ¶ 2.  In addition to thousands of full-time employees working in HP's California headquarters, the Northern District of California is where a substantial portion of HP's research and development, marketing, sales and finance operations are located.   Campbell Decl. at ¶¶ 2-7.

This case is in its early stages, the Court issued a scheduling order today (shortly before the filing of the present motion) and plaintiff has not served adequate infringement contentions (*see* Dkt. Nos. 44 and 51).  However, at this time, HP anticipates that the following persons may be potential witnesses for this action:

•      Albert Tang is an HP business manager with responsibility for managing the relationships with third-party ODMs responsible for carrying out the accused manufacturing processes.  Mr. Tang resides in the Northern District of California.  Campbell Decl. at ¶ 11.

_____

[6] Plaintiff's "technical" expert was located in College Station, Texas.  *Id*.  College Station is located in the Southern District of Texas.  Rueckheim Decl. at ¶ 9.

- Mike Mixon is an HP engineering program manager and is responsible for managing the accused Factory Express services program worldwide.  Mr. Mixon resides in the Northern District of California.  *Id.* at ¶ 12.

With respect to HP's Factory Express and POD Work allegations, HP anticipates that the following persons may be potential witnesses for this action:

- Wade Vinson is an HP Chief Architect for POD Works.  Mr. Vinson resides in the Southern District of Texas.  *Id.* at ¶ 13.

- Harry Tang is a Chief Technologist in engineering project and program management and is knowledgeable regarding the software relating to Factory Express.  Mr. Tang resides in the Southern District of Texas.  *Id.* at ¶ 14.

In 2008, HP acquired Electronic Data Systems Corporation ("EDS"), a Plano-headquartered company with locations throughout the United States and operations in 42 countries.  Rueckheim Decl. at ¶¶ 15-16.  The acquired EDS facility does not perform the accused manufacturing and is not relevant to the present litigation.  Campbell Decl. at ¶ 15.  Other than the Plano EDS facility, HP has no facilities in the Eastern District of Texas.  *Id.*

3.    *Various Relevant and Material Third Parties are Closer to the Northern District of California*

HP is aware of the following potential third party witnesses who may possess relevant and material information for this litigation.  Each of these witnesses is located closer to the Northern District of California than the Eastern District of Texas:

- The inventors for the '328 patent live in Arizona.  Rueckheim Decl. at ¶ 17.

- The '328 patent's prosecuting attorneys live in Arizona and California.  *Id.* at ¶ 18.

- Dr. Jeffrey Harris, the former Motorola Engineering Manager who made the decision to abandon the asserted patent on behalf of original assignee Motorola, Inc., resides in

Phoenix, Arizona.  *Id.* at ¶ 19.  HP's Answer identifies this abandonment decision, e.g., as part of HP's inequitable conduct defense.  *See* Dkt. No. 13, ¶¶ 31-53.

The third-party ODMs that perform many of the accused manufacturing processes are located in geographically diverse areas, including Indiana; Juarez, Mexico; and Asia.  Campbell Decl. at ¶ 10.  Additionally, the attorney who is the subject of HP's inequitable conduct defenses, Mr. W. Jackson Matney, Jr., is believed to reside in Washington, DC.  Rueckheim Decl. at ¶ 20.

## III.   ARGUMENT

### A.   Plaintiff Could Have Brought This Action in the Northern District of California

The threshold determination for a Section 1404(a) transfer analysis is whether the action could have been filed in the judicial district to which transfer is sought.  *In re Horseshoe Entm't*, 337 F.3d 429, 433 (5th Cir. 2003).  There can be no dispute that this case could have been filed in the Northern District of California.  HP is headquartered in the Northern District of California.  Accordingly, the threshold question for transfer under Section 1404(a) is met.

### B.   The Legal Factors for the Transfer Analysis

On a Section 1404(a) motion, the Fifth Circuit applies the "public and private" interest factors to determine convenience of the parties and the witnesses.  *See In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 n.9 (5th Cir. 2008) (en banc) (hereinafter "*Volkswagen II*").

The private interest factors are:  "1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).  The public factors are: "1) the administrative difficulties flowing from court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; and 4) the avoidance of unnecessary problems of conflict of

laws or in the application of foreign law." *Id.* The plaintiff's choice of venue is not a factor in this analysis, but rather only contributes to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Volkswagen II*, 545 F.3d at 315.

## C. The Private and Public Interest Factors Strongly Favor Transfer to the Northern District of California

The Federal Circuit's prior orders in venue transfer cases make "clear that the combination of multiple parties being headquartered in or near the transferee venue and no party or witnesses in the plaintiff's chosen forum is an important consideration." *Voxpath RS, LLC v. LG Elecs U.S.A., Inc.*, No. 2:10-cv-160-JRG, 2012 WL 194370, at *4 (E.D. Tex. Jan. 23, 2012) (*citing In re Acer Am. Corp.*, 626 F.3d 1252, 1254-55 (Fed. Cir. 2010)). As such, this District previously transferred the Sun litigation, noting that "there are a substantial number of material witnesses who reside in the transferee venue [Northern District of California] and none who reside in the Eastern District of Texas." Rueckheim Decl. at ¶ 2-3.

Like the Sun litigation, transfer is appropriate here because there are ***no*** witnesses, documents or evidence anticipated in the Eastern District of Texas. Further, both plaintiff and HP are "headquartered in or near the transferee venue." *See Acer Am.*, 626 F.3d at 1254-55 (granting transfer based on consideration of parties' respective headquarters). While some potential witnesses, *e.g.*, personnel at HP's Houston manufacturing facility, are located closer to the Eastern District of Texas – these witnesses do not change the conclusion that no witnesses or evidence are located in ***the Eastern District of Texas***. *See, e.g., Fifth Gen. Comp. Corp. v. Int'l Bus. Machs. Corp.*, No. 9:08-cv-205, 2009 WL 398783, at *3, 5-6 (E.D. Tex. Feb. 17, 2009) (granting transfer, noting that alleged evidence in Houston is located in the Southern District of Texas); *Acer Am.*, 626 F.3d at 1256 (granting transfer, noting that while Dell's Round Rock,

8

Texas headquarters, "may be a significant source of evidence, Dell's headquarters lies outside the Eastern District of Texas").

       1.    *Judicial Economy Concerns Strongly Favor Transfer to the Northern District of California*[7]

In this case, judicial economy strongly favors transfer.  Northern District of California Judges Hamilton and Vadas amassed considerable familiarity and experience with the issues involved in this case, having presided over the plaintiff's action against Sun for almost three years.  *See* Rueckheim Decl. at ¶ 4.  The Sun case terminated only last year.  *Id.*  Significant activity occurred during this time period, including, *e.g.*, a tech tutorial being presented to the Court; the Court's consideration of infringement allegations and motions to amend infringement contentions, summary judgment motions, and *Daubert* motions; a case management conference and other hearings being held; and the Court's issuance of discovery orders, sanctions orders, protective orders and a pre-trial order.  *Id.* at ¶ 4.

For cases that involve a highly technical subject matter, such as patent litigations, judicial economy favors transfer to a court that is already familiar with the issues involved in the case. *See Zoltar Satellite Sys., Inc. v. LG Elecs. Mobile Commc'ns Co*., 402 F. Supp. 2d 731, 735 (E.D. Tex. 2005) (*citing Regents of the Univ. of Cal. v. Eli Lilly & Co*., 119 F.3d 1559, 1565 (Fed. Cir. 1997)).  Indeed, the "consideration of the interest of justice, which includes judicial economy, may be determinative to a particular transfer motion, even if the convenience of the parties and witnesses might call for a different result." *Regents*, 119 F.3d at 1565.

---

[7] Judicial economy concerns are often analyzed as part of the "All Other Practical Problems" factor.  *See, e.g., Voxpath RS*, 2012 WL 194370, at *6.

Additionally, because this case is in its early stages—with plaintiff having not served sufficient infringement contentions (*see* Dkt. No. 44) and a scheduling order being issued just earlier today (Dkt No. 51)—no practical problems exist that would deter this Court from transferring to the Northern District of California. *See Transunion Intelligence L.L.C. v. Search America, Inc.*, No. 2:10-CV-130, 2011 WL 1327038, at *5 (E.D. Tex. Apr. 5, 2011).

Finally, while Dell/Gateway did not decide to seek transfer of their previous litigations with plaintiff, those litigations were before ***now-retired*** Judges Folsom and Everingham.  As such, the Dell/Gateway litigation "does not affect the analysis of judicial economy or the other private or public interest factors."  *See Rembrandt Vision Techs, L.P. v. Johnson & Johnson Vision Care, Inc.*, No. 2:09-cv-200, 2011 WL 2937365, at *2 (E.D. Tex. July 19, 2011).

2.      *The Relative Ease of Access to Sources of Proof Factor Strongly Favors Transfer to the Northern District of California*

This factor strongly favors transfer because many relevant documents and evidence are maintained in the Northern District of California and no documents are expected to be located in the Eastern District of Texas.  For example, a substantial portion of documents relating to HP's research and development, marketing, sales and finance operations are located in the Northern District of California where HP is headquartered.  Campbell Decl. at ¶¶ 2-7.  The documents maintained by Mr. Albert Tang and Mr. Mixon relating to HP's relationships with the third-party ODMs who manufacture many of the accused products and documents related to Factory Express are also located in California.  *Id.* at ¶ 11-12.

Further, many relevant documents and evidence are maintained closer to the Northern District of California than the Eastern District of Texas.  For example, ***all*** of plaintiff's relevant documents are expected to be located at its Arizona headquarters, which is closer to the Northern District of California.  Also, HP anticipates that Dr. Harris worked at a Motorola facility in

10

Arizona when the decision to abandon the '328 patent was made, as did the '328 patent's inventors.  As such, Motorola's Arizona facility is anticipated to maintain documents that are relevant to at least damages, inequitable conduct issues, and the genesis of the '328 patent.

The accused manufacturing processes are performed in geographically diverse areas and therefore the documents retained at these facilities should not affect the transfer analysis.  For example, while HP maintains a potentially relevant manufacturing facility in Houston, many other potentially relevant manufacturing facilities exist, e.g., in Indiana; Juarez, Mexico; and Asia.  Campbell Decl. at ¶ 10.

### 3. *The Availability of Compulsory Process to Secure the Attendance of Witnesses Factor Favors Transfer to the Northern District of California*

This factor favors transfer because there is at least one relevant non-party witness who is located in California, prosecuting attorney Harold C. McGurk IV.  Rueckheim Decl. at ¶ 18.  The Northern District of California has deposition and trial subpoena power over Mr. McGurk under Fed. R. Civ. P. 45 and Cal. Civ. Proc. Code § 1989.  "Transfer is favored when a transferee district has absolute subpoena power over a greater number of non-party witnesses." *GeoTag, Inc. v. Starbucks Corp.*, Case No. 2:10-cv-572, 2013 WL 890484 at *3 (E.D. Tex. Jan. 14, 2013).  HP is unaware of any non-party potential witnesses located within the trial subpoena power of the Eastern District of Texas.

### 4. *The Cost of Attendance for Willing Witnesses Factor Strongly Favors Transfer to the Northern District of California*

This factor weighs strongly in favor of transfer because many potential witnesses reside in, or are closer to, the Northern District of California.  No witness is expected to be located in the Eastern District of Texas.

The 5th Circuit has explained:

> [T]he factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled.  Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.

*In re Volkswagen AG*, 371 F.3d 201, 204-5 (5th Cir. 2004) (hereinafter "*Volkswagen I*").  The 5th Circuit has adopted a "100 mile rule" that favors transfer (with differing degrees) if the transferee venue is a shorter average distance from witnesses than the transferor venue.  *See Volkswagen II*, 545 F.3d at 317.  In cases where no potential witnesses are residents of the Eastern District of Texas, favoring the District's location as central to all of the witnesses is improper.  *Genentech*, 566 F.3d at 1344.

As shown in the currently anticipated potential witness chart in Rueckheim Decl. at ¶ 21, this factor strongly favors transfer because more non-party witnesses are closer to the Northern District of California than the Eastern District of Texas.  *See U.S. Ethernet Innovations, LLC v. Acer, Inc.*, No. 6:09-cv-448-JDL, 2010 WL 2771842, at *9 (E.D. Tex. July 13, 2010) (the convenience of non-party witnesses is weighed more heavily).  Further, there are no direct flights for the Arizona witnesses for travel to the Eastern District of Texas, while direct flights to the Northern District of California are readily available.  Rueckheim Decl. at ¶ 20.  *See In re Volkswagen I*, 371 F.3d at 204 n.3 (existence or non-existence of direct flights can impact the analysis of travel time).  Similarly, there are no direct flights from Washington D.C. to the Eastern District of Texas, thus the travel time for the sole potential Washington D.C. witness is only slightly shorter to this District as compared to travel time to the Northern District of California.  Rueckheim Decl. at ¶ 23.  *See Tech. Props. Ltd. v. Canon, Inc.*, No. 6:12-cv-202 (E.D. Tex. July 15, 2014) (considering "travel time" in addition to "straight line" distances).

12

5.      *The Local Interest in Having Localized Interests Decided at Home Factor Strongly Favors Transfer to the Northern District of California*

This factor strongly favors transfer because the Northern District of California – the location of HP's headquarters and where HP employs thousands of California residents – has a strong local interest in this matter.  Campbell Decl. at ¶¶ 2-3.  *Voxpath RS*, 2012 WL 194370, at *7 (finding stronger local interest where parties are headquartered, when no party was headquartered in the Eastern District of Texas).  The fact that HP sells its products throughout the United States is not relevant to this factor.  *See Volkswagen I*, 371 F.3d at 206; *W. Coast Trends, Inc. v. Ogio Int'l, Inc.*, No. 6:10-cv-688, 2011 WL 5117850, at *5 (E.D. Tex. Oct. 27, 2011) ("[I]t is well settled that the sale of accused products nationwide does not implicate the interests of the Eastern District of Texas any more than the local interests of any other district.").  While HP does maintain a relevant manufacturing facility in Houston, activities in Houston do not equate to a finding of local interest in the Eastern District of Texas.  *See Fifth Gen. Comp.*, 2009 WL 398783, *5 (evidence in Austin and Houston does not create a local interest because "[n]either Austin nor Houston is located in the Eastern District"); *see also Volkswagen I*, 371 F.3d at 206 ("[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation").

6.      *The Remaining Public Interest Factors Are Neutral*

The remaining public interest factors are neutral.  Both Districts are very familiar with patent law and HP is unaware of any unique conflicts of laws issues in this case.  While the Court recently set a very fast time to trial at the case management conference, this schedule is immaterial to the present transfer analysis which must be conducted as if at the time of filing of the Complaint.  *See In re EMC Corp.*, 501 Fed. Appx. 973 (Fed. Cir. 2013) ("the relevant inquiry

is the state of affairs at the time 'when suit was instituted'") (*quoting Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)).[8]

### D. In the Alternative, HP Requests that the Case Be Transferred to the Southern District of Texas

HP believes that the Northern District of California would be the most convenient forum for the present action. However, should the Court not be inclined to transfer the litigation to the Northern District of California, HP alternatively moves that this Court transfer this action to the Southern District of Texas pursuant to 28 U.S.C. § 1404(a). Unlike the Eastern District of Texas, the Southern District has potential relevance to this action, and the threshold question of whether the suit could have been brought in the Southern District is met, because HP maintains a potentially relevant manufacturing facility in Houston. Campbell Decl. at ¶ 9.

The private transfer factors also favor the Southern District of Texas. The "relative ease of access to sources of proof" factor favors transfer because the HP facility that performs the accused Factory Express process is located in Houston. *Id.* Indeed, plaintiff has already issued discovery requests seeking to inspect this Houston manufacturing facility. Rueckheim Decl. at ¶ 24. In contrast, there are no documents or other sources of proof expected to be located in the Eastern District of Texas.

The "cost of attendance for willing witnesses" factor favors transfer because HP witnesses at the Houston facility, e.g., Wade Vinson and Harry Tang, are located in the Southern District. Campbell Decl. at ¶¶ 13-14. In contrast, there are no witnesses expected to be located in the Eastern District of Texas. Additionally, with respect to the expected witnesses for this case

---

[8] HP is prejudiced by this fast time to trial and has moved to modify the docket control order to help reduce some of the prejudicial effect. *See* Dkt. Nos. 32 and 44.

there are direct flights to Houston and none to Marshall, Texas or Shreveport, Lousiana.  *See In re Volkswagen I*, 371 F.3d at 204 n.3 (direct flights favor transfer); Rueckheim Decl. at ¶ 25.

The public transfer factors also favor transfer to the Southern District of Texas.  The "local interest in having localized interests decided at home" favors transfer because the HP Houston facility employs in excess of 8,000 employees in the Southern District of Texas. Campbell Decl. at ¶ 9.

Because the factors favor transfer to the Southern District of Texas, and none weigh in favor of keeping the case in the Eastern District of Texas, should the case not be transferred to the Northern District of California, this case should alternatively be transferred to the Southern District of Texas.

## IV.   <u>CONCLUSION</u>

The Federal Circuit has recently made clear that a case should be transferred where some factors favor transfer and none weigh against it.  *In re Toyota Motor Corp.*, 747 F.3d 1338, 1340 (Fed. Cir. 2014) ("With nothing on the transferor-forum side of the ledger, the analysis shows that the transferee forum is clearly more convenient.").  Here, substantial judicial economy will be gained by transferring to the Northern District of California, as Judge Hamilton presided over the prior litigation against Sun, involving the very same asserted patent, for nearly three years. HP and multiple third parties (including both witnesses and documents) are located in, or are closer to, the Northern District of California.  Further, there is a strong local interest in having the case decided there.  Critically, no witnesses or evidence relevant to the present action are expected to be in the Eastern District of Texas.  As such, multiple factors weigh in favor of transfer.  This case should therefore be transferred to the Northern District of California.

Dated:  August 22, 2014

Respectfully submitted,

By:  */s/ Michael R. Rueckheim*
     Michael R. Rueckheim
     Texas State Bar No. 24081129
     rueckheim@fr.com
     John Brinkmann
     Texas State Bar No. 24068091
     brinkmann@fr.com
     Jackob Rueckheim
     Texas State Bar No. 24073907
     ben-ezra@fr.com
     FISH & RICHARDSON P.C.
     1221 McKinney Street, Suite 2800
     Houston, TX 77010
     Telephone: (713) 654-5300
     Facsimile: (713) 652-0109

     Katherine Kelly Lutton
     California State Bar No. 194971
     Email: lutton@fr.com
     FISH & RICHARDSON P.C.
     500 Arguello St., Suite 500
     Redwood City, CA 94063
     Telephone: 650-839-5070
     Facsimile: 650-839-5071

     Melissa Richards Smith
     Texas State Bar No. 24001351
     melissa@gillamsmithlaw.com
     GILLAM & SMITH, LLP
     303 S. Washington Avenue
     Marshall, TX 75670
     Telephone: 903-934-8450
     Facsimile: 903-934-9257

     **ATTORNEYS FOR DEFENDANT**
     **HEWLETT-PACKARD COMPANY**

## CERTIFICATE OF CONFERENCE

The undersigned hereby certifies that the parties met and conferred in good faith as required by Local Rule CV-7(h) on August 18, 2014 but were unable to reach agreement. The following attorneys for Defendant were present during the meet and confer: Kathi Lutton (lead counsel), Michael Rueckheim, Jackob Ben-Ezra, and Melissa Smith (local counsel). Abstrax's lead counsel, Jeff Eichmann, and local counsel were also present during the meet and confer. Plaintiff indicated that it opposes the relief requested in the presented motion.

*/s/ Michael R. Rueckheim*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the above and foregoing document will be served on August 22, 2014 to all counsel of record who are deemed to have consented to electronic service via the Court's CM/ECF system per Local Rule CV-5(a)(3).

*/s/ Michael R. Rueckheim*