**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| Abstrax, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CASE NO. 2:14-cv-158-JRG |
| v. | § | |
| | § | |
| Hewlett-Packard Company, | § | |
| | § | |
| Defendant. | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

## I.    INTRODUCTION AND BACKGROUND

Plaintiff Abstrax, Inc. ("Abstrax") is a corporation based in Mesa, Arizona and the owner of U.S. Patent No. 6,240,328 (the '328 Patent). Defendant Hewlett-Packard Company ("HP") is a Delaware corporation with its headquarters in Palo Alto, California. HP also maintains significant facilities in Texas.

Abstrax filed this action on February 28, 2014, alleging that HP uses the methods claimed in the '328 Patent "in connection with its direct to customer product lines, its Factory Express service, and its Performance Optimized Datacenters products and services." Dkt. No. 1 at 3.

On August 22, 2014, HP filed this motion to transfer (Dkt. No. 52). HP contends that the Northern District of California, or alternatively the Southern District of Texas, are clearly more convenient forums for the resolution of this case than the Eastern District of Texas. Abstrax opposes HP's motion to transfer. Having considered the motion, the parties briefing, and all of the evidence in the record, HP's motion is **DENIED**.

## II.    LEGAL STANDARDS

28 U.S.C § 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district court or division where it might have been brought." 28 U.S.C. § 1404(a). However, a motion to transfer venue should only be granted upon a showing that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff. *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Genentech, Inc.*, 566 F.3d 1388, 1342 (Fed. Cir. 2009); *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008); *In re Volkswagen of America, Inc. (Volkswagen II)*, 545 F.3d 304, 315 (5th Cir. 2008). District courts have "broad discretion in deciding whether to order a transfer." *Balawajder v. Scott*, 160 F.3d 1066, 1067 (5th Cir. 1998) (quoting *Caldwell v. Palmetto State Sav. Bank*, 811 F.2d 916, 919 (5th Cir. 1987)).

The initial question in applying the provisions of § 1404(a) is whether the suit could have originally been brought in the proposed transferee district. *In re Volkswagen AG (Volkswagen I)*, 371 F.3d 201, 203 (5th Cir. 2004). If the transferee district is a proper venue, then the Court must weigh the relative public and private factors of the current venue against the transferee venue. *Id.* In making such a convenience determination, the Court considers several private and public interest factors. *Id.* The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315. The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the

2

law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law." *Nintendo*, 589 F.3d at 1198; *Genentech*, 566 F.3d at 1342; *TS Tech.*, 551 F.3d at 1319; *Volkswagen II*, 545 F.3d at 315.   Although the private and public factors apply to most transfer cases, "they are not necessarily exhaustive or exclusive," and no single factor is dispositive. *Volkswagen II*, 545 F.3d at 314-15.

In the Fifth Circuit, the plaintiff's choice of venue has not been considered a factor in this analysis. *Volkswagen II*, 545 F.3d at 314-15.   Rather, the plaintiff's choice of venue has been seen as contributing to the defendant's burden in proving that the transferee venue is "clearly more convenient" than the transferor venue. *Id.* at 315; *In re Nintendo*, 589 F.3d at 1200; *In re TS Tech*, 551 F.3d at 1319.

## IV.   ANALYSIS

### A.   Proper Venue

The parties do not dispute—and the Court expressly finds—that this case could have been brought in either the Northern District of California or the Southern District of Texas. Having satisfied this threshold for both the primary and alternative transferee districts, the Court will first addresses HP's motion to transfer this case to the Northern District of California, and then turn to HP's alternative request for transfer to the Southern District of Texas.

### B.   Transfer to the Northern District of California – Private Interest Factors:

#### i.   *Relative Ease of Access to Sources of Proof*

Despite technological advances in transportation of electronic documents, physical accessibility to sources of proof continues to be weighed as a private interest factor. *See Volkswagen II*, 545 F.3d at 316; *TS Tech*, 551 F.3d at 1321; *Genentech*, 566 F.3d at 1345. Nevertheless, the moving defendant bears the burden of establishing that the proposed transferee

3

venue is clearly more convenient than the Eastern District of Texas.  *See, e.g.*, *In re Nintendo Co.*, 589 F.3d at 1197.   Vague assertions regarding the volume and location of potential evidence, much of which may be irrelevant to the case, cannot satisfy that burden.  *See In re Apple Inc.*, 743 F.3d 1377, 1379 (Fed. Cir. 2014).

To carry its burden, HP relies on the declaration of Robert Campbell.  Dkt. No. 52-1. Mr. Campbell is an HP employee working in the area of consumer PCs.  *Id.* at ¶ 1.  Mr. Campbell makes four essentially identical assertions in his declaration.  First, he states that "a substantial portion of HP's research and development . . . takes place at its facilities in California," and "[a] substantial portion of the documents related to HP's research and development and product development is located in California."  *Id.* at ¶ 4.  He then makes similarly imprecise statements with respect to HP's "marketing operations," "sales operations" and "finance operations."  *Id.* at ¶¶ 5-7 (respectively).

Mr. Campbell's "substantial portion" statements omit at least as much information as they convey.  For example, Mr. Campbell takes no position with respect to whether or not the activities taking place in California relate to the accused products or processes, as opposed to HP's other activities.  Moreover, his statements make no effort to parse HP's activities in the Northern District of California from those occurring in other portions of the state—a stark contrast to HP's careful parsing of activities occurring in Dallas, Texas and Houston, Texas from those occurring within this District.  *See, e.g.*, Dkt. No. 52 at 18.  "Substantial portion" is a phrase which is subject to very different constructions.  It fits squarely within that category commonly understood by lawyers to be "weasel words."  Such words' meaning is malleable to a point where they mean what the user wants them to mean in any given situation; they have no meaning of their own.

4

A careful examination of Mr. Campbell's declaration leaves the Court with no specific information or reliable guidance as to where the documents or witnesses relevant to this case are actually located.  Moreover, subsequent venue discovery has raised questions with respect to the representations supporting HP's motion.  Mr. Campbell testified at his deposition that he was not familiar with several of the accused products in the case; and that he did not investigate the facts regarding HP's facilities in Plano, Texas until after signing his declaration.  *See* Dkt. No. 74-2 at 9.

The Court relies on defendants to accurately disclosure the facts underlying the motions they file.  This is particularly true when the defendant requests relief from the Court early in a case, because most, if not all, of the relevant facts are exclusively controlled by the defendant.[1] An incomplete recitation of those facts may be just as misleading as an inaccurate recitation.  This means that the defendant must perform a thorough investigation of the facts underlying the venue analysis, ***before filing the motion.***  The Court is not persuaded that such an investigation was performed in this case.  In fact, the declarant's deposition shows it was not.

HP dismisses the relevance of its own facilities in Plano, Texas (within the Eastern District of Texas).  Dkt. No. 52-1 at ¶ 15. Abstrax challenged that characterization, and has identified as many as 500 HP employees working in the "server group" at the Plano facility.[2] Dkt. No. 74-4 at 8-9.  During their depositions, Abstrax discovered that those 500 employees are involved in sales, marketing, technology services, field support and research and development activities that relate directly to products that are accused in Abstrax's complaint and

---

[1] Here, venue discovery revealed additional facts material to the Court's venue analysis.  However, such discovery is not always available or feasible.  This places a responsibility on the moving defendant to be accurate, precise and candid with the Court.

[2] HP argues that the Court should give little weight to HP's Plano, Texas facilities, because certain of the server group employees moved to Plano in the weeks following the filing of the complaint and the transfer analysis is conducted as if at the time of filing of the complaint. *See In re EMC Corp.*, 501 Fed. Appx. at 978.  The record is not entirely clear on this point, however the Court is persuaded that at least a portion of the relevant evidence and witnesses were located in Plano before the filing of the complaint.

infringement contentions.  *Id*.  After reviewing the entire record, the Court is persuaded that both documentary evidence and witnesses will likely be drawn from HP's facilities within this District.

In addition to denying the relevance of its Plano facility, HP attempts to portray the late discovery of information regarding the server group in its favor, arguing as follows:

> Poignantly, this information [regarding the location of potentially relevant evidence and witnesses in Plano, Texas] was discovered and identified by HP in connection with its 30(b)(6) deposition, underscoring that HP has been forthright and worked to provide a complete record.

Dkt. No. 69 at 4.  It is inconceivable to the Court that HP would not have known that its Plano, Texas facility would feature prominently into any dispute over venue.  More than five thousand (5,000) HP employees work at the facility, which stands within the Eastern District of Texas.  If there is anything "poignant" about HP's conduct, it is that this facility and its role in this case were not investigated and acknowledged before HP filed its motion.

HP further argues that the accused products are manufactured in "geographically diverse areas" and therefore "should not affect the transfer analysis."  Dkt. No. 52 at 16; Dkt No. 52-1 at ¶¶ 9-10.  The Court disagrees.  A large body of evidence is located closer to the Eastern District of Texas than to the Northern District of California.  Most significantly, the accused "Factory Express" manufacturing process is used exclusively at HP's facilities in Houston, Texas.  *See* Dkt. No. 52-1 at ¶ 9.  Moreover, HP cites its Houston facilities as supporting its alternative request for transfer to the Southern District of Texas—undermining the "geographic diversity" argument offered in support of transfer to the Northern District of California.  *See* Dkt No. 52 at 19.

The Court finds that Abstrax has identified specific documentary evidence and likely witnesses that are located in or near to the Eastern District of Texas.  In contrast, HP has failed to

make an equivalent showing with respect to what evidence, if any, will be reliably drawn from the Northern District of California.  Accordingly, this factor weighs against transfer.

### ii.    *Availability of Compulsory Process*

The second private interest factor is the availability of compulsory process to secure the attendance of non-party witnesses. A venue that has "absolute subpoena power for both deposition and trial" is favored over one that does not.  *Volkswagen II*, 545 F.3d at 316.  In its motion, HP identified a single non-party witness located in the Northern District of California (and therefore subject to that Court's absolute subpoena power).  Dkt. No. 52 at 16.  In response, Abstrax identified four such witnesses located in the Eastern District of Texas.  Dkt. No. 66 at 11.  Both parties attack the relevance of their counterparts' potential witnesses.

However, both parties' briefing glosses over this factor, and neither party presents precise and reliable information addressing this factor.  Accordingly, this factor is neutral in the transfer analysis.

### iii.    *Cost of Attendance for Willing Witnesses*

The third private interest factor is the cost of attendance for willing witnesses. "The convenience of the witnesses is probably the single most important factor in a transfer analysis." *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009).  While the Court must consider the convenience of both the party and non-party witnesses, it is the convenience of non-party witnesses that is the more important factor and is accorded greater weight in a transfer of venue analysis.  *Aquatic Amusement Assoc., Ltd. v. Walt Disney World Co.*, 734 F. Supp. 54, 57 (N.D.N.Y. 1990); *see also* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3851 (3d ed. 2012).  In weighing this factor, "[a] district court should assess the

relevance and materiality of the information the witness may provide." *In re Genentech, Inc.*, 566 F.3d at 1343.

HP supports its motion with a chart of potential witnesses and argues that "more non-party witnesses are closer to the Northern District of California than the Eastern District of Texas." Dkt. No. 52 at 17; Dkt. 52-2 at 6-7 (chart). A close inspection of this chart reveals that it tells the Court very little. Instead, it merely identifies unnamed "[w]itnesses from HP's headquarters," certain principals from Abstrax, unnamed "witnesses from Plaintiff's headquarters," several witnesses affiliated with Motorola, and unnamed "[w]itnesses from potentially relevant manufacturing facilities," among others. Dkt. No. 52-2 at 6-7.

Apart from the prosecuting attorney for the patent-in-suit, Abstrax's expert witnesses in a separate litigation, and the unnamed "[w]itnesses from HP's headquarters," none of the witnesses identified in HP's chart are located within the Northern District of California. As discussed above, the prosecuting attorney in the Northern District of California is balanced against at least four non-party witnesses within this District and so does not significantly impact the transfer analysis.

Similarly, the Court gives little weight to the locations of the parties' expert witnesses. *See MedioStream, Inc. v. Acer Am. Corp.*, 2008 U.S. Dist. LEXIS 74066 at *10 (E.D. Tex. Sept. 26, 2008). The Court gives even less weight to the locations of expert witnesses retained in other cases; and, the Court gives no weight at all to expert witnesses the plaintiff does not intend to call. *See* Dkt. No. 66-1 at ¶ 13 ("Abstrax does not intend to serve expert reports or call at trial either of Dr. Mark Martin or Mr. Robert Mills, two of the experts we used in the prior cases.").

While HP need not identify "key witnesses," or show "that the potential witness has more than relevant and material information," *In re Genentech, Inc.*, 566 F.3d at 1343-44, it must

make at least some meaningful showing regarding materiality.  HP's unnamed "witnesses from headquarters" do not satisfy this standard.  HP's reply brief identifies only one employee that resides within the Northern District of California.  HP has not provided evidence sufficient to establish that a "substantial number of material witnesses reside in the transferee venue."  *In re Genentech, Inc.*, 566 F.3d at 1344.

HP also argues that a number of potential witnesses affiliated with either Abstrax or Motorola reside in Arizona, and are therefore closer to the Northern District of California. However, HP has made no showing that such witnesses would be willing to attend trial or would provide material testimony if they did take the stand.  Absent such a showing in this regard, the location of these witnesses cannot meaningfully factor into the Court's transfer analysis.

HP ignores a number of witnesses who reside closer to the Eastern District of Texas than to the Northern District of California.  As discussed above, the only HP facility that performs the accused Factory Express process in the United States is located in Houston, Texas.  HP's chart minimizes this fact, identifying only "[w]itnesses from potentially relevant manufacturing facilities," including the Houston facility.  Dkt. No. 522 at 6-7.  However, HP's Mr. Campbell identifies Mr. Wade Vinson and Mr. Henry Tang as potential witnesses residing in Houston, Texas.  Dkt. No. 52-1 at ¶¶ 13-14.  Mr. Vinson is an HP Chief Architect for the accused Performance Optimized Data center (POD) products, and Mr. Tang is an HP Chief Technologist in engineering and program management and is knowledgeable regarding the accused Factory Express manufacturing process.  *Id.*

The Court observes that HP cites the location of both Mr. Vinson and Mr. Tang in support of its alternative request for transfer to the Southern District of Texas but ignores them when arguing for transfer to the Northern District of California.  The fact that these potential

witnesses are specifically identified, along with the admitted importance of HP's Houston facilities again belies HP's argument that a majority of its witnesses will be drawn from California.  Similarly, Abstrax has identified at least one willing, non-party witness residing in St. Francisville, Louisiana, which is substantially closer to this District than to the Northern District of California.

For all of the reasons stated above, HP has failed to show that transfer to the Northern District of California would reduce the cost of attendance for willing witnesses in this case.  This factor weighs against transfer.

### iv.    Other Practical Problems

In deciding whether or not to transfer a case pursuant to § 1404, the Court considers the practical considerations associated with such a transfer, including "those that are rationally based on judicial economy."  *Eolas Tech., Inc. v. Adobe Sys., Inc.*, 2010 WL 3835762, at *6 (denying a request to sever defendants), *aff'd In re Google, Inc.*, 412 Fed. Appx. 295 (Fed. Cir. 2011).  "Motions to transfer venue are to be decided based on the situation which existed when suit was instituted," *In re EMC Corp.*, 501 Fed. Appx. 973, 976 (Fed. Cir. 2013) (internal quotation omitted).  Moreover, "[e]ach case turns on its own facts" and the meaningful application of the § 1404 factors to those facts "often creates a reasonable range of choice" in which the district court must exercise its discretion.  *In re Vistaprint Ltd.,* 628 F.3d 1342, 1347 (Fed. Cir. 2010).

HP argues that judicial economy favors transfer because Abstrax previously asserted the '328 Patent against Sun Microsystems in the Northern District of California.  However the parties settled that case prior to any substantive rulings from the Northern District of California (*e.g.*, rulings on claim construction, dispositive motions, or *Daubert* motions).  In this context, the Court is not persuaded that judicial economy favors transfer, especially given that this case

has progressed substantially towards claim construction (a hearing is set for December 3, 2014). Moreover, HP answered on May 12, 2014, denied that venue was convenient in the Eastern District of Texas, but then delayed filing its motion to transfer for more than three months.  Such delay also undercuts HP's arguments regarding the judicial economy of transfer.  *See In re Wyeth*, 406 F. App'x 475, 477 (Fed. Cir. 2010) ("The Fifth Circuit as well as other circuits have emphasized that a party should not delay filing of a motion to transfer.").

For all of the reasons stated above, the Court finds that this factor also weighs against transfer.

### C.     Transfer to the Northern District of California – Public Interest Factors:

#### i.     *Local Interest in Having Localized Interests Decided at Home*

The Court considers the local interest in the litigation because "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation." *Volkswagen I*, 371 F.3d at 206 (5th Cir. 2004).  Interests that "could apply virtually to any judicial district or division in the United States," such as the nationwide sale of infringing products, are disregarded in favor of particularized local interests.  *Volkswagen II*, 545 F.3d at 318; *In re TS Tech*, 551 F.3d at 1321.

HP contends that the Northern District of California has a greater local interest in this case because HP maintains its corporate headquarters in that District.  However, HP has failed to show that its employees or offices in the Northern District of California have a particular connection to this case.  To the contrary, HP admits that it uses one of the accused manufacturing processes exclusively[3] in Houston, Texas, while other accused manufacturing processes are performed in "geographically diverse areas." Dkt. No. 69, at 3; Dkt. No. 52 at 12.  Moreover,

---

[3] HP's Houston facility is the only such location identified as using the Factory Express process within the United States.

Abstrax has identified more than five thousand (5,000) HP employees working in Plano, Texas (within the Eastern District of Texas), including approximately five hundred (500) employees working in the particular server group that helped to develop the accused products and processes. Abstrax has also shown that the same server group was formerly located in Richardson, Texas (also within the Eastern District of Texas).

Having reviewed the entire record submitted in this case, including the deposition testimony cited by both parties, the Court finds that both the Northern District of California and the Eastern District of Texas have a local interest in the disposition of the case.  On balance, the Court finds that this factor is neutral.

### i.     The Administrative Difficulties Flowing From Court Congestion

Another public interest factor is court congestion, which favors a district that can bring a case to trial faster. *In re Genentech*, 566 F.3d at 1347.  HP would read this factor out of the transfer analysis entirely, on the theory that such an analysis "must be conducted as if at time of filing the Complaint."  Dkt. No. 52 at 18-19 (citing *In re EMC Corp.*, 501 Fed. Appx. 973 (Fed. Cir. 2013).  While the Court strives to move cases in an expeditious manner, it does not set them for trial immediately at the time the Complaint is filed.  Furthermore, the Court does not read *In re EMC Corp.* to require such an immediate adoption of a trial schedule.  The Court is not aware of such a practice in any federal court.  In any event, the Eastern District of Texas can bring this case to a trial sooner that it would be brought to trial in the Northern District of California.  This factor weighs against transfer.

### ii.     *Familiarity with the Governing Law*

Courts also consider "the familiarity of the forum with the law that will govern the case." *Volkswagen I*, 371 F.3d at 203.  The Court observes that both the Northern District of California and Eastern District of Texas are familiar with patent law.  This factor is neutral.

### iii.     *The Avoidance of Unnecessary Problems of Conflict of Laws*

The parties acknowledge that no conflict of laws questions are expected in this case. This factor is neutral.

### D.     HP's Alternative Motion to Transfer to the Southern District of Texas

To prevail on a motion to transfer, a defendant must show that the transferee venue is "clearly more convenient" than the venue chosen by the plaintiff.  *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009).  This requires a particularized showing of the facts supporting the motion for transfer.  HP's alternative motion to transfer this case to the Southern District of Texas is roughly a page long and consists of little more than attorney argument.  Dkt. No. 52 at 19-20.  It is not disputed that some evidence in this case will be located in the Southern District of Texas.  It is also likely that certain witnesses will come from that District—although HP stops short of asserting that fact, perhaps due to the conflict between its competing requests for relief. Had HP adequately supported its alternative argument, it is possible that the Court could have been persuaded that transfer was warranted.  However, considering the record before the Court, HP has failed to meet its burden to show that the Southern District of Texas is "clearly more convenient" that this District.

## VI.     CONCLUSION

After weighing the evidence and the record as a whole, the Court finds that HP has failed to carry its burden to show that either the Northern District of California or the Southern District

of Texas are clearly more convenient forums than the Eastern District of Texas.  Accordingly,

HP's Motion to Transfer Venue (Dkt. No. 52) is **DENIED** in all respects.

**So Ordered and Signed on this**

**Nov 3, 2014**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE