**THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | | |
|---|---|---|
| ABSTRAX, INC., | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CASE NO. 2:14-CV-158-JRG |
| | § | |
| HEWLETT-PACKARD COMPANY, | § | |
| | § | |
| *Defendant*. | § | |
| | § | |
| | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is the opening claim construction brief of Plaintiff Abstrax, Inc. ("Plaintiff") (Dkt. No. 80, filed on October 23, 2014), the response of Defendant Hewlett-Packard Company ("Defendant") (Dkt. No. 92, filed on November 11, 2014), the reply of Plaintiff (Dkt. No. 107, filed on November 20, 2014), and the sur-reply of Defendant (Dkt. No. 115-5, filed on November 26, 2014).  The Court held a claim construction hearing on December 3, 2014.  Having considered the arguments and evidence presented by the parties both at the hearing and in their claim construction briefing, the Court issues the following Claim Construction Order.

## I. BACKGROUND

Plaintiff brings suit alleging infringement of United States Patent No. 6,240,328 ("the '328 patent") by Defendant.  The application leading to the '328 patent was filed on April 27, 1995, and is a continuation application based on an earlier application filed on January 10, 1994. The '328 patent issued on May 20, 2001 and is entitled "Manufacturing Method for Assembling Products by Generating and Scheduling Dynamically Assembly Instructions."  The '328 patent relates to a manufacturing method for assembling a number of products by generating and scheduling dynamically a number of assembly instructions from modeling information by the creation of abstract assembly steps.  A configuration model represents a product to be assembled. Once a configuration is selected, the computer program applies the configuration to the abstract assembly steps to create the actual assembly instructions for the configuration.  The Abstract of the '328 patent states:

> A manufacturing method is provided for assembling a number of products by generating and scheduling dynamically a number of assembly instructions from modeling information. The manufacturing method generates exact assembly instructions for the full theoretical scope of the product line. The generated instructions do not require any human lookup or inference. Even exact instructions for configured components of the final product are generated. Which instructions are required to build the final product are derived from a "model" of the product.

Claim 10 of the '328 patent is representative of the patent's subject matter and is shown below:

> 10. A method, performed by a computer, for assembling a product having components, the method comprising the steps of:
>
> (a) providing one or more abstract assembly steps for assembling the product, the abstract assembly steps containing variable portions for assembling the product with potentially different configurations, the variable portions including variable parameters capable of representing different component information;
>
> (b) obtaining a configuration model corresponding to a requested configuration of the product, the configuration model including one or more of the component

information lines corresponding to one or more components utilized in the requested configuration; and

(c) applying the configuration model to the abstract assembly steps provided for assembling the product by inserting component information from the component information lines into the variable parameters of the variable portions of the abstract assembly steps to produce one or more assembly instructions for assembling the product to have the requested configuration.

In addition, the '328 patent was the subject of prior lawsuits in this District.  Many of the terms now disputed between the current parties were previously disputed and construed by other judges within this District.  In particular, on October 31, 2008, Magistrate Judge Everingham issued a claim construction order on various terms in the '328 patent in Civil Action No. 2:07-cv-221 ("Prior Order I," attached as an exhibit in this lawsuit as Dkt. No. 80-2).  Many of those constructions were objected to by a prior defendant, and District Judge David Folsom issued an order on September 21, 2009 revisiting the claim constructions and affirming all of Judge Everingham's earlier constructions ("Prior Order II," attached as an exhibit in this lawsuit as Dkt. No. 80-3).  These prior orders are relevant to the claim construction issues disputed herein, and are referenced in both parties' briefing.

## II.  LEGAL PRINCIPLES

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'"  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  To determine the meaning of the claims, courts start by considering the intrinsic evidence.  *See id.* at 1313; *see also C.R. Bard, Inc. v. U.S. Surgical Corp.*, 388 F.3d 858, 861 (Fed. Cir. 2004); *Bell Atl. Network Servs., Inc. v. Covad Commc'ns Group, Inc.*, 262 F.3d 1258, 1267 (Fed. Cir. 2001).  The intrinsic evidence includes the claims

themselves, the specification, and the prosecution history.  *See Phillips*, 415 F.3d at 1314; *C.R. Bard*, 388 F.3d at 861.  Courts give claim terms their ordinary and accustomed meaning as understood by one of ordinary skill in the art at the time of the invention in the context of the entire patent.  *Phillips*, 415 F.3d at 1312-13; *accord Alloc, Inc. v. Int'l Trade Comm'n*, 342 F.3d 1361, 1368 (Fed. Cir. 2003).

The claims themselves provide substantial guidance in determining the meaning of particular claim terms.  *Phillips*, 415 F.3d at 1314.  First, a term's context in the asserted claim can be very instructive.  *Id.*  Other asserted or unasserted claims can aid in determining the claim's meaning because claim terms are typically used consistently throughout the patent.  *Id.* Differences among the claim terms can also assist in understanding a term's meaning.  *Id.*  For example, when a dependent claim adds a limitation to an independent claim, it is presumed that the independent claim does not include the limitation.  *Id.* at 1314-15.

"[C]laims 'must be read in view of the specification, of which they are a part.'"  *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc)).  "[T]he specification 'is always highly relevant to the claim construction analysis.  Usually, it is dispositive; it is the single best guide to the meaning of a disputed term.'" *Id.* (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)); *accord Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325 (Fed. Cir. 2002).  This is true because a patentee may define his own terms, give a claim term a different meaning than the term would otherwise possess, or disclaim or disavow claim scope.  *Phillips*, 415 F.3d at 1316.  In these situations, the inventor's lexicography governs.  *Id.*  The specification may also resolve the meaning of ambiguous claim terms "where the ordinary and accustomed meaning of the words used in the claims lack sufficient clarity to permit the scope of the claim to be ascertained from

the words alone." *Teleflex*, 299 F.3d at 1325.  But, "[a]lthough the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims." *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1187 (Fed. Cir. 1998) (quoting *Constant v. Advanced Micro-Devices, Inc.*, 848 F.2d 1560, 1571 (Fed. Cir. 1988)); *accord Phillips*, 415 F.3d at 1323.

The prosecution history is another tool to supply the proper context for claim construction because a patent applicant may also define a term in prosecuting the patent.  *Home Diagnostics, Inc., v. Lifescan, Inc.*, 381 F.3d 1352, 1356 (Fed. Cir. 2004) ("As in the case of the specification, a patent applicant may define a term in prosecuting a patent.").  "[T]he prosecution history (or file wrapper) limits the interpretation of claims so as to exclude any interpretation that may have been disclaimed or disavowed during prosecution in order to obtain claim allowance." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

Although extrinsic evidence can be useful, it is "less significant than the intrinsic record in determining the legally operative meaning of claim language."  *Phillips*, 415 F.3d at 1317 (citations and internal quotation marks omitted).  Technical dictionaries and treatises may help a court understand the underlying technology and the manner in which one skilled in the art might use claim terms, but technical dictionaries and treatises may provide definitions that are too broad or may not be indicative of how the term is used in the patent.  *Id.* at 1318.  Similarly, expert testimony may aid a court in understanding the underlying technology and determining the particular meaning of a term in the pertinent field, but an expert's conclusory, unsupported assertions as to a term's definition are entirely unhelpful to a court.  *Id.*  Generally, extrinsic

evidence is "less reliable than the patent and its prosecution history in determining how to read claim terms." *Id.*

The "determination of claim indefiniteness is a legal conclusion that is drawn from the Court's performance of its duty as the construer of patent claims." *Exxon Research & Eng'g Co. v. United States*, 265 F.3d 1371, 1375 (Fed. Cir. 2001). Section 112 entails a "delicate balance" between precision and uncertainty:

> On the one hand, the definiteness requirement must take into account the inherent limitations of language.  Some modicum of uncertainty, the Court has recognized, is the price of ensuring the appropriate incentives for innovation. … At the same time, a patent must be precise enough to afford clear notice of what is claimed, thereby apprising the public of what is still open to them.  Otherwise there would be a zone of uncertainty which enterprise and experimentation may enter only at the risk of infringement claims.  And absent a meaningful definiteness check, we are told, patent applicants face powerful incentives to inject ambiguity into their claims. … Eliminating that temptation is in order, and the patent drafter is in the best position to resolve the ambiguity in patent claims.

*Nautilus Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2128-29 (2014) (citations omitted). Therefore, in order for a patent to be definite under § 112, ¶2, "a patent's claims, viewed in light of the specification and prosecution history, [are required to] inform those skilled in the art about the scope of the invention with reasonable certainty." *Id.* at 2129. The determination of "definiteness is measured from the viewpoint of a person skilled in the art at the time the patent was filed." *Id.* at 2128. (emphasis original, citations omitted).  "The definiteness requirement . . . mandates clarity, while recognizing that absolute precision is unattainable." *Id.*  This standard reflects rulings that have found that "the certainty which the law requires in patents is not greater than is reasonable, having regard to their subject-matter." *Id.* at 2129.  "Whether a claim reasonably apprises those skilled in the art of its scope is a question of law that [is] review[ed] de

novo." *Microprocessor Enhancement Corp. v. Texas Instruments Inc.*, 520 F.3d 1367, 1374 (Fed. Cir. 2008).  As it is a challenge to the validity of a patent, the failure of any claim in suit to comply with § 112 must be shown by clear and convincing evidence.  *Nautilus*, 134 S. Ct. at n.10.

## III.  CONSTRUCTION OF AGREED TERMS

There is an issue as to whether certain terms are disputed and need to be construed. Initially, certain terms were disputed between the parties and briefed by Plaintiff.  Defendant's responsive brief conceded that many of these terms did not need construction and asked the Court not to construe these terms.  *See* Dkt. No. 92 at 8-9[1].  Despite this "agreement," Defendant refused to abandon its arguments with respect to the "undisputed" terms.  *See* Dkt. No. 122 at 2-3.  Accordingly, Plaintiff asks that the Court rule that no construction is necessary, and to expressly reject Defendant's earlier proposed constructions in order to avoid re-litigating such disputes at a later stage of the case. *See* Dkt. No. 107 at 5-6; *see also* Dkt. No. 111.

The Court finds that the parties have agreed that no construction is necessary for certain "undisputed" terms.[2]  During the claim construction hearing, Defendant expressly stated that it would not advance any construction for these terms as part of this lawsuit.  Based on the parties' agreement and Defendant's express representations to the Court,[3] there is no need for this Court to construe these terms.

---

[1] All page references in citation to the Court's electronic docket refer to the pages of the document as filed via ECF, not to the internal pagination of the original document.

[2] These "undisputed" terms are the following:  the preambles of claims 1 and 10, "text information," "identifier," "instructions," "obtaining a configuration model," "component information" (claim 10), "location field," "connection field," and "property."  *See* Dkt. No. 92 at 4-5; Dkt. No. 107 at 1-2.

[3] The Court notes that, consistent with its statements at the claim construction hearing, if Defendant attempts to construe these "undisputed" terms or advance its withdrawn arguments for these terms, Plaintiff may seek appropriate relief from the Court.

In addition to the undisputed terms addressed above, the parties have agreed to certain constructions. The Court hereby adopts such agreed constructions:

| Term | Agreed Construction |
|------|---------------------|
| "computer graphics images" | "pictures, as opposed to alphabetic and numeric characters, for display on a computer screen" |
| "variable parameters" | "in a computer program, words or sets of characters that are used to represent component information that vary and that can be made specific in the course of running the program." |
| "component tag" | "a portion of the component information line that is used to identify a component." |
| "precise placement information" | "information delineating an exact location or arrangement" |

See Dkt. No. 68, October 6, 2014 Joint Claim Construction and Prehearing Statement; Dkt. No. 92 at 8-9; Dkt. No. 111, November 24, 2014 Joint Claim Construction Chart.

## IV.  CONSTRUCTION OF DISPUTED TERMS

As indicated above, this is not the first opportunity for a Court within this District to construe the '328 patent.  Although this case presents many of the issues that were previously addressed by other Courts in this District, the Court nevertheless carefully considered all of the parties' arguments (both the new and repetitive arguments) in construing the claims in this case. See Burns, Morriss & Stewart Ltd. P'ship v. Masonite Int'l Corp., 401 F. Supp. 2d 692, 697 (E.D. Tex. 2005) (describing that although a previous construction may be instructive and provide the basis of the analysis, particularly when there are new parties and those parties have presented new arguments, the previous construction is not binding on the court).  As indicated by Burns, however, any previous constructions are instructive and will at times provide part of the basis for the Court's analysis.  See id. The Court therefore turns to an analysis of the evidence and arguments presented in the parties' briefing and at the December 3, 2014 hearing.

### A. "one or more abstract assembly steps for assembling the product"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| one or more potential (not actual) configuration-independent instructions that are ready to be resolved into specific assembly instructions for assembling the product | a set of one or more configuration-independent assembly instructions that are ready to be resolved into specific assembly instructions for assembling the full theoretical scope of the product line |

The disputed term "one or more abstract assembly steps for assembling the product" appears in claims 1 and 10 in the '328 patent.

### (1) The Parties' Positions

In the prior litigation, the term "abstract assembly steps for assembling the product" was construed to mean "potential (not actual) configuration-independent instructions that are ready to be resolved into specific assembly instructions." *See* Prior Order I at 11; Prior Order II at 8. Plaintiff submits that "one or more abstract assembly steps for assembling the product" should be given the same construction as in the prior litigation. *See* Dkt. No. 80 at 9-14.

Defendant disagrees, arguing that its proposed construction better accounts for "definitional statements" in the intirinsic record. Specifically, Defendant argues that: (i) the Applicant made specific statements in the specification and prosecution history that limited the invention to a single set of abstract assembly steps; (ii) the abstract assembly steps must be configuration-independent assembly instructions because that reflects the teaching in the intrinsic record and is clearer for the jury; and (iii) the specification and prosecution history limited the invention to the full theoretical scope of the product line. *Id.* at 9-14.

Plaintiff replies that Defendant's use of the term "a set of" and "full theoretical scope of the product line" is contrary to the plain language of the claims and to the express definition of the term "abstract assembly steps" provided by the Applicant. Dkt. No. 107 at 2-5. Plaintiff

argues that Defendant's relied upon prosecution history does not evidence a clear disavowal, and that any references to the theoretical scope of the product line in the specification is to a preferred embodiment, is not a definition, and is particularly not a limitation to the claims.  *Id.* at 3, 5, n.6.

### (2) Analysis

The relevant claim language from the independent claims (which is the same for both claims 1 and 10) is shown below:

> (a) providing **one or more abstract assembly steps for assembling the product**, the abstract assembly steps containing variable portions for assembling the product with potentially different configurations, the variable portions including variable parameters capable of representing different component information

(emphasis added).  As discussed above, the parties dispute three primary issues:  (i) whether "one or more" means "a set of one or more," (ii) whether "abstract assembly steps" is more clearly expressed as "potential (not actual) configuration-independent instructions" or "configuration-independent assembly instructions," and (iii) whether the disputed phrase should be limited to the "full theoretical scope of the product line."

Regarding the first dispute, the plain language of the claim implies that the phrase should be interpreted as "one or more" and not "a set of one or more."  Indeed, the plain language of "one or more" is inconsistent with the plain (and plural) meaning of a "set."  Defendant relies on isolated references to a "set" in the specification to support its argument.  However, such references are merely descriptions of a preferred embodiment, and do not amount to a clear disclaimer.  The Court finds that the examples in the specification are non-limiting embodiments of the invention that should not be imported into the claims.  Further, the Court rejects Defendant's argument that there was a disclaimer in the prosecution history – particularly any

"clear" and "unambiguous" disclaimer – that the claim limitations were limited to a "set" as opposed to "one or more."

Regarding the second dispute, the parties' proposed constructions are largely based on a specific statement made during the prosecution history of the patent in which the Applicant stated that the:

> abstract assembly steps are abstract, configuration-independent, potential instructions that are ready to be resolved into specific instructions based on the configuration model describing the configuration to be used, which allows for instructions to be provided for any of a number of possible configurations.

*See* December 26, 1996 Response at 3, Dkt. No. 92-5.  Plaintiff's proposal of "potential (not actual) configuration-independent instructions," together with the other undisputed language, captures the meaning of this phrase and the claim term.  Indeed, Defendant's responsive brief does not appear to dispute the language of "potential (not actual)" in Plaintiff's proposed construction.  Instead, the Defendant argues that the phrase should include the term "assembly." The Court agrees and finds that both the "potential (not actual)" language (proposed by Plaintiff) and the "assembly" term (proposed by Defendant) are supported by the intrinsic record and the claim language.

With respect to the third dispute, the plain language of the claim implies that the abstract assembly steps are for assembling the product and not for assembling a "full theoretical scope of the product line."   The Defendant cites nothing in the claim language to support such a limitation.  Instead, the Defendant relies primarily on disclaimers or limitations allegedly found in the specification and the prosecution history.   While there are isolated instances of the proposed phrase in the intrinsic record, nothing in the specification's description amounts to a clear disclaimer.   The Court finds that the examples in the specification are non-limiting

embodiments of the invention, and should not be imported into the claims.  Further, the Court

rejects Defendant's argument that there was a disclaimer in the prosecution history – particularly

any "clear" and "unambiguous" disclaimer – that the assembly instructions must be generated for

the "full theoretical scope of the product line."  Defendant's citations to various portions of the

prosecution history are not persuasive.  The Court finds that the claim language controls and that

the phrase "assembling the product" should mean just that absent clear evidence to the contrary.

Accordingly, the Court construes **"one or more abstract assembly steps for assembling
the product"** to mean **"one or more potential (not actual) configuration-independent
assembly instructions that are ready to be resolved into specific assembly instructions for
assembling the product."**

### B.  "configuration model"

| Plaintiff's<br>Proposed Construction | Defendant's<br>Proposed Construction |
|---|---|
| computer readable data that includes information concerning how parts, pieces, or components of a product fit together and how they are configured in the product. Such information may include, for example, information about properties, connectivity, or location | a computer readable data file that includes information concerning how parts, pieces, or components of a product fit together and how they are configured in the product. Such information may include, for example, information about properties, connectivity, or location |

The term "configuration model" appears in claims 1, 3-10, and 14-17 of the '328 patent.

### (1) The Parties' Positions

In prior litigation, the term "configuration model" was construed to mean "computer

readable data that includes information concerning how parts, pieces, or components of a product

fit together and how they are configured in the product. Such information may include, for

example, information about properties, connectivity, or location." *See* Prior Order I at 12-13.[4] Plaintiff submits that the Court should adopt the same construction as in the prior litigation. *See* Dkt. No. 80 at 19. Plaintiff argues that there is no support or requirement that the configuration model be a "file."

Again, Defendant disagrees, arguing that the specification discloses that the configuration model is formatted into a file of component information lines. *See* Dkt. No. 92. at 16. Defendant argues that the configuration model is not just data, it is data that is formatted into a file structure of numbered component information lines. *Id.* Defendant argues that the prosecution history and a dictionary definition support its construction. *Id.* at 17.

Plaintiff replies that the term "file" is nowhere to be found in the intrinsic evidence, whether the specification or the prosecution history. *See* Dkt. No. 107 at 11-13. Plaintiff further argues that the term model is not vitiated by its proposed construction, and rebuts Defendant's argument that there is a disclosure in the specification that the model can be a "file" or that the definition of "file" requires a finding that "model" be a "file." *Id.*

## (2) Analysis

In this case, the parties' sole dispute is whether the term "configuration model" is limited to just "data …" (Plaintiff's contention) or to a "data file …" (Defendant's contention). The independent claims (claims 1 and 10) specify that the configuration model includes "one or more component information lines…" At no point do the claims suggest or require that the configuration model is a "file." Accordingly, the Court rejects Defendant's argument that the failure to include the term "file" vitiates the "model" term.

_____

[4] The prior defendant did not object to this term's construction to Judge Folsom. *See* Prior Order II.

Defendant relies upon the specification and the prosecution history for its proposed construction.  However, the term "file" is never mentioned in the intrinsic record for this term. In contrast, the specification makes it clear that "configuration model" may be data:

> The configuration model comprises information about how parts, pieces or components of a product fit together and how it is configured in the product. The configuration model is represented as ASCII **data**. Contained in the **data** is a hierarchical physical description of the configuration, the order number associated with the configuration, information about independent sub-systems within the configuration, connectivity of interrelated components, and specific attributes of individual components in the configuration. Example 1 shows an abstract example of the **data** format for the configuration model.
>
> <order number>
>
> <component information line l>
>
> . . .
>
> <component information line n>

'328 patent, col. 3, ll. 15-30 (emphasis added).  The fact that the preferred embodiment of a configuration model shows the data in a number of lines does not necessarily require the data to be "formatted into a file structure" as Defendant urges.  Likewise, the fact that a definition of "file" from a dictionary suggests that a collection of lines may be a "file" does not require the claimed "configuration model" to be limited to a "data file."

The Court rejects Defendant's proposal to include the word "file" in the construction of the term "configuration model."  The Court finds that the term "file" is not found in the intrinsic record for this term and the Court is not convinced that it is necessary or warranted.  Likewise, the Court rejects Defendant's alternative proposals (advanced at the claim construction hearing) to include the words "model" and "array" instead of "file."  The Court adopts the construction proposed by Plaintiff, which is also the construction previously determined by the prior claim construction.

Accordingly, the Court hereby construes **"configuration model"** to mean **"computer readable data that includes information concerning how parts, pieces, or components of a product fit together and how they are configured in the product. Such information may include, for example, information about properties, connectivity, or location."**

### C. "component information lines"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| data within the configuration model which corresponds to a component used in the desired configuration | data within the configuration model which corresponds to a component used in the desired configuration that contains a component tag followed by at least one of a physical location field, a property field, or a connection field |

The disputed term "component information lines" appears in claims 1, 3-10, and 14-17 of the '328 patent.

### (1) The Parties' Positions

In the prior litigation, the term "component information lines" was construed to mean "data within the configuration model which corresponds to a component used in the desired configuration." *See* Prior Order I at 13; Prior Order II at 11. Plaintiff submits that the term "component information lines" should be given the same construction in this action. *See* Dkt. No. 80 at 20-21.

Defendant responds that its proposed construction is better supported by the claim language and the specification. *See* Dkt. No. 92 at 14. Defendant argues that in order for a configuration model to indicate "how components fit together and are configured in a product" the component information lines (in addition to including the defined requirement of including a

component tag) must include at least one of a "physical location field, a property field, or a connection field" to be workable. *Id.* at 15.

### (2) Analysis

The parties agree on the first half of the term's construction, but disagree with respect to whether or not the Court should include the phrase "that contains a component tag followed by at least one of a physical location field, a property field, or a connection field" in its construction. Claims 1 and 10 are representative of the disputed terms and are shown below in relevant part:

> [claim 1]  (b) obtaining a configuration model corresponding to a requested configuration of the product, the configuration model including one or more **component information lines** corresponding to one or more of the components utilized in the requested configuration, **each of the component information lines containing at least one of** a component tag identifying a component to be used in the requested configuration, a physical location field providing precise placement information for the component to be used in the requested configuration, a property field indicating a property of the component to be used in the requested configuration and a connection field indicating all locations to which the component to be used in the requested configuration is to be connected;

> [claim 10]   (b) obtaining a configuration model corresponding to a requested configuration of the product, the configuration model including one or more of the **component information lines** corresponding to one or more components utilized in the requested configuration; and

(emphasis added).  For claim 1, the claim language expressly states that each of the component information lines contains at least one of a (i) component tag, (ii) physical location field, (iii) property field, and (iv) connection field.   For claim 10, the claim language has no such limitations.  Instead, similar limitations are found in the dependent claims.  *See, e.g.*, claim 14 (component tag), claim 15 (physical location field), claim 16 (property field), and claim 17 (connection field).

Defendant's proposed construction impermissibly attempts to import limitations from the specification and the dependent claims.  First, Defendant's proposed construction would require

a component tag in all instances.  This is contrary to the language of claim 1, which does not require a component tag in all instances of the "component information lines."  While the specification does include a statement that "[a] 'component information line' contains an item tag followed by zero or one physical location field, zero or more property fields, and zero or one connection field" (col. 3, ll. 34-36), that statement is in the context of examples in the preferred embodiment and do not amount to a clear disclaimer or express definition.  The Court finds that, when read in the proper context, the examples in the specification are non-limiting embodiments of the invention that should not be imported into the claims.

Similarly, several of the limitations that Defendant would read into independent claim 10 are separately found in dependent claims 14-17.  While not dispositive, the doctrine of claim differentiation suggests that the limitations found in the dependent claims should not be read into independent claim 10.  Overall, the plain claim language clearly weighs against Defendant's proposed construction.

Accordingly, the Court hereby construes **"component information lines"** to mean **"data within the configuration model which corresponds to a component used in the desired configuration."**

### D.  "property field indicating a property of the component"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| area or location within a component information line indicating a characteristic of a component | an area or location within the component information lines for information indicating a characteristic of a component |

The disputed term "property field indicating a property of the component" appears in claims 1, 4, 5, 7, 8, and 16 of the '328 patent.

**(1) The Parties' Positions**

In its briefing, Plaintiff argued that the term "property field indicating a property of the component" should be construed as "data within the component information lines indicating a characteristic of a component." *See* Dkt. No. 80 at 25.    However, during the claim construction hearing, Plaintiff proposed a revised construction: "area or location within a component information line indicating a characteristic of a component." *See* Dkt. No. 123, Plaintiff's Notice of Revised Claim Construction Proposal.

During the claim construction hearing, Defendant did not dispute Plaintiff's use of the phrase "a … line" (instead of "the … lines") or disagree with the Plaintiff's position as to why "an" was not appropriate.  Accordingly, the sole live dispute between the parties is whether the Court should adopt Defendant's proposal and include the phrase "for information" in its construction.

**(2) Analysis**

The claim language is clear that the property field is part of and/or found within the component information line.  *See* claims 1 and 16.  Independent claim 1 specifies that the component information line may include "a property field indicating a property of the component to be used in the requested configuration."  Similarly, in dependent claim 16, the claim specifies that the component information line (of independent claim 10) contains a "property field indicating a property of a component to be used in the requested configuration." The specification states that "[p]roperty fields are comprised of a property tag and the property data separated by a period."  Col. 3, ll. 38-39.  "Examples of property fields would be color, component configuration information, sub-system identification, or license information."  *Id.* at col. 3, ll. 39-42.

Overall, the Court finds that Defendant's use of "for information" is warranted.  This is consistent with the parties' previously agreed construction in the prior litigation, and supported in the intrinsic record.  For example, the specification states that the property field includes property data.  *See* '328 patent, col. 3, ll. 38-39.  Thus, the specification implies that some type of data or *information* is a necessary part of the property field.

Accordingly, the Court hereby construes **"property field indicating a property of the component"** to mean **"area or location within a component information line for information indicating a characteristic of a component."**

### E.   "applying the configuration model to the abstract assembly steps"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction |
|---|---|
| having a computer use information from the configuration model to resolve the abstract assembly steps | having the computer merge information from the configuration model to resolve the abstract assembly steps without recourse to a string or array |

The disputed term "applying the configuration model to the abstract assembly steps" appears in claims 1 and 10 of the '328 patent.

### (1) The Parties' Positions

Plaintiff submits that the term "applying the configuration model to the abstract assembly steps" should be construed as "having a computer use information from the configuration model to resolve the abstract assembly steps"; this is the construction adopted by Judges Everingham and Folsom in the prior litigation.  *See* Dkt. No. 80 at 26; Prior Order I at 14; Prior Order II at 12. Plaintiff further argues that there is no support for the term "merge" in the intrinsic record; that such a construction would preclude preferred embodiments; and, that there is no disclaimer in

the prosecution history that would require "without recourse to a string or array" as proposed by Defendant.  Dkt. No. 80 at 26-28.

Defendant responds that its proposal of the term "merge" is supported by the remaining claim language that recites "applying the configuration model to the abstract assembly steps … by inserting component information from the component information lines into the variable parameters…"  Dkt. No. 92 at 16.  Defendant further argues that the exclusion of "strings or arrays" is based upon clear disclaimers made in the prosecution history.  *Id.*  In particular, Defendant argues that during prosecution the patent distinguished using "strings and arrays" by stating that the present invention uses a specific configuration model and the process of inserting component information from the component information lines into the variable parameters.  *Id.* at 17.

Plaintiff replies that there is no requirement that the "inserting" language found in the claim requires a "merge" operation.  *See* Dkt. No. 107 at 10.  Plaintiff further argues that there is no disavowal in the prosecution history, and rather than disclaiming all uses of strings and arrays, the Applicant merely distinguished the use of a configuration model applied to an abstract assembly as opposed to *merely* using strings and arrays for variable data.  *Id.* at 9-10.

### (2) Analysis

The parties have raised two disputes with respect to this term:  (i) whether the "applying" step requires that the computer "use" or "merge" information from the configuration model to resolve the abstract instructions; and (ii) whether the proposed construction should include the language of "without recourse to a string or array."

The disputed term "applying the configuration model to the abstract assembly steps" appears in claims 1 and 10 of the '328 patent in the same context and surrounding claim language:

> (c) **applying the configuration model to the abstract assembly steps** provided for assembling the product by **inserting** component information from the component information lines into the variable parameters of the variable portions of the abstract assembly steps to produce one or more assembly instructions for assembling the product to have the requested configuration.

(emphasis added).

Regarding the "merge" limitation, Defendant argues that the subsequent claim language of "inserting" requires its "merge" construction. The Court disagrees. Contrary to Defendant's argument, the Court finds no conflict between Plaintiff's proposed construction and the remaining claim language. The fact that Plaintiff's proposed construction substitutes the term "use" does not negate or alter the subsequent claim language of "inserting." The term "merge" is never used in the claims, specification, or prosecution history, and the Court finds no support or requirement for the "merge" limitation. The Court finds that Plaintiff's construction more accurately reflects the scope and meaning of the claim language.

Turning to the "without recourse to a string or array" limitation, Defendant relies solely on alleged disclaimers in the prosecution history. Specifically, Defendant points to statements made by the Applicant to in response to the examiner's argument that "the idea of 'strings' and 'array' are well known within programming to allow for different (variable) data and data inputs." November 15, 1995 Office Action at 3, Dkt. No. 92-5. In response to such argument, the Applicant stated that the "application of the configuration model for a requested configuration to the abstract assembly steps to produce assembly instructions for the specific configuration requested is not rendered obvious merely by the idea of using strings and arrays to

allow for variable data, as the Office Action contends."  December 26, 1995 Response at 5, Dkt.

No. 92-5.  The Examiner maintained his position, to which the Applicant made the following

response:

> The Examiner's sole basis for the obviousness rejection rests on the assertion, as
> applied to step (a), that "the idea of 'strings' and 'array' are well known within
> programming to allow for different (variable) data and data inputs." … The
> abstract assembly instructions of the present claimed invention only have to be
> written once for a given product because the variability is resolved by the present
> claimed invention based on the configuration model. Specifically, as claimed, the
> "configuration model" is applied "to the abstract assembly steps" provided for
> assembling the product by inserting component information from the component
> information lines into the variable parameters of the variable portions of the
> abstract assembly steps to produce one or more assembly instructions for
> assembling the product to have the requested configuration. This feature is not
> rendered obvious by Sakamoto.

June 24, 1996 Appeal Brief at 16-17, Dkt. No. 92-7.  The Court disagrees that these statements

disclaimed any use of strings and arrays, as argued by Defendant.  Instead, the Court agrees with

Plaintiff's arguments that the Applicant contrasted the claim limitations of applying a

configuration model to an abstract assembly step.

"[W]hile the prosecution history can inform whether the inventor limited the claim scope

in the course of prosecution, it often produces ambiguities created by ongoing negotiations

between the inventor and the PTO.  Therefore, the doctrine of prosecution disclaimer only

applies to unambiguous disavowals."  *Grober v. Mako Prods., Inc*., 686 F.3d 1335, 1342 (Fed.

Cir. 2012) (citations omitted); *see also SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278,

1286-87 (Fed. Cir. 2005) ("When the patentee makes clear and unmistakable prosecution

arguments limiting the meaning of a claim term in order to overcome a rejection, the courts limit

the relevant claim term to exclude the disclaimed matter. … An ambiguous disclaimer, however,

does not advance the patent's notice function or justify public reliance, and the court will not use

it to limit a claim term's ordinary meaning.")  Further, when a prosecution argument is subject to more than one reasonable interpretation, it cannot rise to the level of a clear and unmistakable disclaimer.  *See SanDisk Corp.*, 415 F.3d at 1287 ("There is no 'clear and unmistakable' disclaimer if a prosecution argument is subject to more than one reasonable interpretation, one of which is consistent with a proffered meaning of the disputed term.") (internal quotation marks omitted); *see also 01 Communique Laboratory, Inc. v. LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012) *(quoting SanDisk).*

Based on the prosecution history as a whole, the Court is not persuaded that the patentee clearly or unambiguously disavowed the use of strings and arrays in the context of a configuration model applied to abstract assembly steps.  Accordingly, the Court adopts the Plaintiff's proposal, and hereby construes **"applying the configuration model to the abstract assembly steps"** to mean **"having a computer use information from the configuration model to resolve the abstract assembly steps."**

### F.  "assembly instructions for assembling the product to have the requested configuration"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction[5] |
|---|---|
| automatically generated specific instructions for assembly of the product | automatically generated step-by-step specific instructions for assembly of the product sufficient to assemble the product without human lookup or inference |

The disputed term "assembly instructions for assembling the product to have the requested configuration" appears in claims 1 and 10 of the '328 patent.

---

[5] Defendant proposes an alternative construction based on the language used in the prior claim construction orders.  Defendant's alternative construction is the following:  "automatically generated step-by-step specific instructions for assembly of the product that are specific enough to tell the assembler everything necessary to perform that part of the manufacturing process."

### (1) The Parties' Positions

In the prior litigation, the term "assembly instructions for assembling the product to have the requested configuration" was construed to mean "automatically generated specific instructions for assembly of the product." *See* Prior Order I at 10; Prior Order II at 7.     Plaintiff submits that the term "assembly instructions for assembling the product to have the requested configuration" should be given the same construction in this action. *See* Dkt. No. 80 at 29.

Defendant disagrees, arguing that the specification and prosecution history make clear that Defendant's proposed constructions are necessary and warranted. *See* Dkt. No. 92 at 18-19. Defendant argues that the patentee repeatedly stated that the invention – not just the preferred embodiment – generates step-by-step assembly instructions that do not require any human lookup or inference. *Id.* The Defendant argues that the specification makes clear that producing assembly instructions that do not require human lookup or inference was the difference between the invention and prior known manufacturing methods. *Id.* at 19. The Defendant also argues that the Plaintiff's construction ignores the language found in the prior Courts' claim construction orders that "the statements from the prosecution history suggest that the assembly instructions must be exact in the sense that they must be sufficient enough to tell the assembler 'everything necessary to perform that part of the manufacturing process.'" *Id.* at 20.

Plaintiff replies that Defendant fails to show any disavowal in the specification or prosecution history that would warrant Defendant's constructions. *See* Dkt. No. 107 at 11.  All of the cited specification references are to benefits of the invention and do not rise to the level of a disclaimer. *Id.* at 11-12.  Plaintiff argues that Defendant's construction would exclude the preferred embodiments. *Id.* at 12-13.  Plaintiff argues that the prosecution history only warrants the finding that the instruction must be precise or specific, not that they must be step-by-step

instructions sufficient to assemble the product without human lookup or inference.  *Id.* at 13. Plaintiff argues that the prior Courts rejected the same limitations that the Defendant is attempting to propose for this term.  *Id.* at 13.

### (2) Analysis

The relevant claim language from the independent claims (which is the same for both claims 1 and 10) is shown below:

> (c) applying the configuration model to the abstract assembly steps provided for assembling the product by inserting component information from the component information lines into the variable parameters of the variable portions of the abstract assembly steps to produce one or more **assembly instructions for assembling the product to have the requested configuration**.

(emphasis added).  The parties dispute two issues with respect to the construction of this language:  (i) whether the specific instructions should be "step-by-step" instructions, and (ii) whether the term should be limited by the phrase "sufficient to assemble the product without human lookup or inference."

Defendant points to various portions of the specification where the patentee allegedly stated that the alleged invention – and not just a preferred embodiment – generates "step-by-step assembly instructions" that "do not require any human lookup or inference."  See '328 patent, Abstract, col. 1, l. 41 – col. 2, l. 9; see also col. 9, ll. 15-18.  The Court finds that nothing in the specification's description rises to the level of a clear disclaimer.  While the specification provides some references to "step-by-step" instructions and generated instructions that "do not require any human lookup or inference," the Court finds that the examples in the specification are non-limiting embodiments of the invention that should not be imported into the claims.  The fact that a patent describes an invention's objectives or benefits does not require that each of the claims be construed to reflect those advantages.  The Federal Circuit has consistently held that

"particular embodiments appearing in the written description will not be used to limit claim language that has broader effect." *Innova/Pure Water,* 381 F.3d at 1117. Even where a patent describes only a single embodiment, absent a "clear intention to limit the claim scope," it is improper to limit the scope of otherwise broad claim language by resorting to a patent's specification. *Id.*; *see also Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 906 (Fed. Cir. 2004) (citing numerous cases rejecting the contention that the claims of the patent must be construed as being limited to the single embodiment disclosed and stating that claims are to be given their broadest meaning unless there is a clear disclaimer or disavowal); *Comark Commc'ns, Inc. v. Harris Corp.,* 156 F.3d 1182, 1187 (Fed. Cir. 1988) ("Although the specification may aid the court in interpreting the meaning of disputed claim language, particular embodiments and examples appearing in the specification will not generally be read into the claims."); *Phillips*, 415 F.3d at 1323.

Defendant also points to various portions of the prosecution history that allegedly amount to a disclaimer. However, the term "step-by-step" was never used in the prosecution history, nor was the phrase "without human lookup or inference." The fact that the applicant distinguished the prior art because they did not create "exact" instructions (in addition to other missing limitations) does not rise to the level required for a disclaimer as to the limitations proposed by Defendant. Based on the prosecution history as a whole, the Court rejects the Defendant's argument that there was a disclaimer in the prosecution history – particularly any "clear" and "unambiguous" disclaimer – that the Applicant disclaimed "step-by-step" instructions and generated instructions that "do not require any human lookup or inference." *See Grober v. Mako Prods., Inc.*, 686 F.3d 1335, 1342 (Fed. Cir. 2012) ("However, while the prosecution history can inform whether the inventor limited the claim scope in the course of prosecution, it often

produces ambiguities created by ongoing negotiations between the inventor and the PTO. Therefore, the doctrine of prosecution disclaimer only applies to unambiguous disavowals.")(citations omitted); *see also SanDisk Corp. v. Memorex Prods., Inc.*, 415 F.3d 1278, 1286-87 (Fed. Cir. 2005) ("When the patentee makes clear and unmistakable prosecution arguments limiting the meaning of a claim term in order to overcome a rejection, the courts limit the relevant claim term to exclude the disclaimed matter. … An ambiguous disclaimer, however, does not advance the patent's notice function or justify public reliance, and the court will not use it to limit a claim term's ordinary meaning.")

The relevant claim language does not support Defendant's positions.  Instead, the relevant claim language includes "one or more assembly instructions …," which counsels against the "step-by-step" limitation.  The Court finds that the term "step-by-step" is not helpful to the jury nor is it a necessary limitation to the claim.  Plaintiff's proposed construction already includes the "specific" limitation, and the additional modifier of "step-by-step" is neither necessary nor warranted.  Likewise, the Court finds that the phrase "without human lookup or inference" is merely an intended objective and/or benefit described in the specification and is not a limitation in the claim.  It is the claim language itself that must control.  The claim does not require each and every detail in the assembly process.  For example, for one exemplary step in the preferred embodiment the specification provides the following sole instruction:  "Paint background of block red." '328 patent, col. 7, l. 43.  Additional step-by-step instructions of this painting step (such as shaking a spray can, removing a cap from the spray can, pressing a nozzle of the spray can, etc.) are not provided, and certain inferences on how to paint the block may be necessary by the assembler.  Accordingly, the Court rejects Defendant's proposed construction.

In the alternative, Defendant proposes an alternative construction based on language used in the prior claim construction orders.  In particular, in describing the prosecution history (and refuting the prior defendant's arguments), Judge Everingham stated that the cited passages in the prosecution history "suggest that the assembly instructions must be exact in the sense that they must be specific enough to tell the assembler everything necessary to perform that part of the manufacturing process."  Prior Order I at 9.  Likewise, in affirming the initial claim construction, Judge Folsom reiterated this same characterization of the prosecution history.  *See* Prior Order II at 6-7.  Rather than providing a specific definition to the disputed term or providing more precision to the term "specific," the Court finds that the language contained in the prior orders refuted the prior defendant's arguments and constructions.  The Court finds that this phrase should not be part of the actual construction of this disputed term.  Further, the Court does not find that this phrase is necessary or helpful to the jury to provide more clarification to the disputed term.  Thus, the Court rejects Defendant's alternative construction.

The Court hereby construes **"assembly instructions for assembling the product to have the requested configuration"** to mean **"automatically generated specific instructions for assembly of the product."**

### G.  "variable portions for assembling the product"

| Plaintiff's Proposed Construction | Defendant's Proposed Construction[6] |
|---|---|
| No construction needed. | Indefinite |

---

[6] Defendant originally proposed that this phrase (i) is governed by 112(6), (ii) means "partially unresolved data fields," or (iii) is indefinite.  *See* Dkt. No. 68-2 at 6-7.  In its responsive brief, Defendant apparently withdrew all but the indefinite arguments.  In its reply brief Plaintiff seeks the Court's express construction that Defendant's alternative (but withdrawn) constructions are incorrect.  Because the Defendant is not advancing these alternative constructions and has admitted that it will not advance such constructions as to this term, the Court will only rule on the indefiniteness dispute.

The disputed term "variable portions for assembling the product" appears in claims 1 and 10 of the '328 patent.  The term "variable portions" appears in many of the dependent claims.

### (1) The Parties' Positions

Plaintiff submits that the term "variable portions for assembling the product" does not require construction, is not governed by section 112(6), and does not mean "partially unresolved data fields" (as alternatively proposed by Defendant).  *See* Dkt. No. 80 at 12-16.

Defendant argues that the terms "abstract assembly steps," "variable portions," and "variable parameters" have no plain and ordinary meaning. *See* Dkt. No. 92 at 24.  Defendant instead argues that these three terms are drafted in nested fashion and each successive term is intended to be narrower than the preceding term.  *Id.*  However, Defendant also argues that the term "variable portions" is not reasonably bounded by claim language, finds no specification support to fix the problem and is therefore indefinite.  *Id.*  More specifically, Defendant argues that the patent specification does not provide an explanation of what portion of the "abstract assembly step" is the "variable portion" or a description of the nature or degree of "variability" that "variable portions" possess.  *Id.* at 26.  According to Defendant, the term is indefinite because it is impossible to determine, with reasonable certainty, where the "variable portions" of "abstract assembly steps" stop and other portions of "abstract assembly steps" begin.  *Id.*

### (2) Analysis

The parties' primary dispute is whether this term needs construction (*e.g.*, whether it should be given its plain meaning) or whether it is indefinite.  Plaintiff provides no construction for the term and does not provide any plain meaning to the term.  Defendant likewise provides no proposed construction, arguing only that the term is indefinite and accordingly has no plain meaning.

The phrase "variable portions for assembling the product" appears in independent claims 1 and 10. The constituent term "variable portions" appears in numerous dependent claims. The relevant claim language from the independent claims (which is the same for both claims 1 and 10) is shown below:

> (a) providing one or more abstract assembly steps for assembling the product, the abstract assembly steps containing **variable portions for assembling the product** with potentially different configurations, the **variable portions** including **variable parameters** capable of representing different component information;

(emphasis added). The claim language is clear – and the parties do no dispute – that the "abstract assembly steps" contain variable portions, and that the variable portions include "variable parameters." The parties dispute the term "abstract assembly steps" but Defendant does not argue that the term is indefinite. Further, the parties agree that "variable parameters" means "in a computer program, words or sets of characters that are used to represent component information that vary and that can be made specific in the course of running the program."

The specification includes numerous references to the concept of "variability," a few of which are reproduced below:

> The assembly steps may be abstract or **variable**. The **variability** is resolved by extracting the information from the configuration model when it is processed by assembly instruction generator 10.

> **Variability** is provided in the abstract assembly steps via **variable parameters** capable of representing different component information, as explained herein, and having the format <**variable parameter**>, as shown below.

> Since the component tag is "block", the four abstract EWI's for "block" all need to be fully resolved. The first abstract step has an unresolved portion of text, signified by the **variable parameter** <color>. The color property data "red" is used to resolve this variability. The first image used also has **variability** and uses the color property again.

'328 patent, col. 4, ll. 23-26, col. 7, l. 9-12, col. 8, ll. 30-35 (emphasis added). The term "variable portions" is not used in the specification and was added in new claims when the '328

patent application was filed as a continuation application.   *See* April 20, 1995 Response/Amendment at 2, 7, Dkt. No. 92-12.  Later during prosecution, the Applicant clarified in the claim that the variable portions includes "variable parameters capable of representing different component information."  *See* August 15, 1995 Response/Amendment at 2, Dkt. No. 92-4.

Defendant's position is that the term is indefinite because the patent specification "does not provide an explanation of what portion of the 'abstract assembly step' is the 'variable portion' or a description of the nature or degree of 'variability' that 'variable portions' possess beyond 'variable parameters.'"  *See* Dkt. No. 92 at 26.  In other words, while the meaning of "variable parameters" and "abstract assembly steps" can be determined, the degree of overlap with "variable portions" is undeterminable and the extent or degree of variability of "variable portions" beyond "variable parameters" is not reasonably certain.  The Court disagrees.

The fact that the term "variable portions" may overlap with the "variable parameters" term does not, by itself, require a finding of indefiniteness.  While the specification does not reference "variable portions," it is the claim language that controls and that which specifically describes the claimed "variable portions."  The "variable portions" term is broad and, in general, conveys the idea that the abstract assembly steps have portions that are variable.  For example, the ordinary meaning of the term "variable" means "capable of being varied or changed," and the ordinary meaning of the term "portions" means "a part of any whole."  In other words, the disputed phrase simply means parts of the abstract assembly steps that can change.  That is all that is meant by this term.  Similarly, in its opening brief, Plaintiff characterized the ordinary meaning of this phrase as being "portions that vary or can change."  *See* Dkt. No. 80 at 13.

31

This is a fundamentally simple term that the Defendant has gone to great lengths to make complicated and present as indefinite.[7]   Importantly, Defendant gives no effect to the surrounding claim limitations and instead attempts to construe the term in isolation.  In truth, the surrounding claim limitations provide specific guidance to this term <u>as claimed</u>, in that the "variable portions" are part of the "abstract assembly steps" and that the "variable portions" include "variable parameters."  The fact that the parties have agreed to a meaning for "variable parameters" – which is expressly part of the claimed "variable portions" – provides a further boundary and a level of certainty as to the disputed term in the claim context.  Reading the claim as a whole, the Court rejects Defendant's argument that there is a "logical flaw" that renders the claim indefinite.

The Court finds that there is no dispute that one of ordinary skill in the art would understand the meaning of the term "variable portions" or "variable portions for assembling the product" in the context of the claims.  Likewise, the Court finds that there is no dispute that one of ordinary skill in the art would understand with "reasonable certainty" the scope of the invention and the bounds of the claims.  Accordingly, pursuant to the Supreme Court's holding in *Nautilus*, the Court rejects Defendant's arguments that the claim when "read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."   Since this resolves the dispute between the parties, the Court finds that the term requires no further construction.  *See U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1568 (Fed. Cir. 1997) ("Claim construction is a matter of resolution of disputed meanings and technical scope, to

---

[7] Although the Court notes that Defendant does not rely upon any expert for its proposition a person of ordinary skill in the art would not be reasonably certain as to the scope of this claim element

clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement.  It is not an obligatory exercise in redundancy."); *see also O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("[D]istrict courts are not (and should not be) required to construe every limitation present in a patent's asserted claims.") (*citing U.S. Surgical*, 103 F.3d at 1568).

The Court hereby construes **"variable portions"** to have its plain meaning.

## V.  CONCLUSION

The Court adopts the above constructions set forth in this opinion for the disputed terms of the patent-in-suit.  The Court **ORDERS** that the parties may not refer, directly or indirectly, to each other's claim construction positions in the presence of the jury.  Likewise, the parties are ordered to refrain from mentioning any portion of this opinion, other than the actual definitions adopted by the Court, in the presence of the jury.  Any reference to claim construction proceedings is limited to informing the jury of the definitions adopted by the Court.

The Court further **ORDERS** the parties to mediate this case before the previously-appointed mediator, in good faith, and within thirty (30) days of the issuance of this Memorandum Opinion and Order.  Counsel and at least one corporate officer for each of the parties is directed to attend such mediation.  Said corporate officer must possess sufficient authority to unilaterally make binding decisions adequate to address any good faith offer or counteroffer of settlement that might reasonably arise during such mediation.  Failure to do so shall be deemed by the Court as a failure to mediate in good faith and may subject that party to such sanctions as the Court deems appropriate.

**So ORDERED and SIGNED this 12th day of January, 2015.**

RODNEY  GILSTRAP
UNITED STATES DISTRICT JUDGE